**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

VAN LUU PHAN,

                 Petitioner,

           v.

WARDEN, ADELANTO ICE
PROCESSING CENTER, et al.,

                 Respondents.

Case No. 5:26-cv-03203-SP

**MEMORANDUM OPINION AND ORDER GRANTING PETITION**

**I.**

**INTRODUCTION**

On June 10, 2026, petitioner Van Luu Phan, a federal immigration detainee, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition" or "Pet."). Docket no. 1. Petitioner is being held at the U.S. Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California. Petitioner contends his detention violates: (1) the governing regulations of the Immigration and Nationality Act ("INA"); (2) 8 U.S.C. § 1231(a)(6) under *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (3) his right to procedural due process under the Fifth Amendment. Petitioner also asserts respondents' third country removal policies violate the Fifth Amendment, the Convention Against Torture, and governing regulations. Petitioner seeks immediate release and injunctive relief.

1

On June 17, 2026, respondents filed an Answer, stating they are not presenting an opposition argument.  Docket no. 10.

For the reasons discussed below, petitioner has shown his detention violates *Zadvydas*.  The court therefore grants the Petition and issues a writ of habeas corpus requiring petitioner's immediate release from immigration custody along with other relief.

## II.

## BACKGROUND

Petitioner is a 73-year old native and citizen of Cambodia.  Pet. at 7; Declaration of Van Luu Phan ("P. Decl.") ¶ 1.  Petitioner entered the United States as a refugee in June 1982 and became a lawful permanent resident in 1983.  Pet. at 7, 11; P. Decl. ¶ 4.  Petitioner has lived in the United States since then, is married, and has a United States citizen son.  Pet. at 7, 9; P. Decl. ¶ 19.

In 1998, petitioner was ordered removed based on a 1994 criminal conviction.  Pet. at 7, 11; P. Decl. ¶¶ 7-8.  In 1999, after approximately seven months in custody, petitioner was released on an Order of Supervision ("OSUP") because Immigration and Nationality Services was unable to effectuate his removal to Cambodia.  Pet. at 7, 12; P. Decl. ¶ 8.  Petitioner attended his immigration check-ins.  Pet. at 7; P. Decl. ¶ 8.

In 2005, petitioner filed a motion to reopen his immigration proceedings, which was granted.  Pet. at 13; P. Decl. ¶ 10.  The proceedings were subsequently administratively closed.  Pet. at 13; P. Decl. ¶ 10.

In 2006, petitioner was arrested and subsequently pleaded guilty to conspiracy in connection with a stolen treasury checks scheme.  Pet. at 12; P. Decl. ¶ 9.  Petitioner has had no convictions since then.  *Id*.

Petitioner attended his ICE check-ins until around 2013, when an ICE official informed him that he no longer had to attend check-ins because his immigration case had been administratively closed. Pet. at 13; P. Decl. ¶ 11.  Then, in September 2019,

2

petitioner received notice that his immigration case had been re-opened and he was once again required to attend ICE check-ins.  Pet. at 13; P. Decl. ¶ 12.

On October 26, 2023, an immigration judge again ordered petitioner removed to Cambodia.  Pet. at 13; P. Decl. ¶ 12.  Petitioner continued to comply with the conditions of his OSUP following this order.  Pet. at 13; P. Decl. ¶ 13.

On December 29, 2026, petitioner appeared at a routine ICE check-in, when ICE officers arrested him.  Pet. at 13; P. Decl. ¶ 14.  The ICE officers provided petitioner a Notice of Revocation of Release which stated that the decision was based on "a determination that there are changed circumstances in your case" and that his case would be "sent for review by Cambodia for the issuance of a travel document."  Pet. at 13-14; Declaration of Neha Singh Malik ("Malik Decl."), Ex. A.  Petitioner did not get the opportunity to respond to the reasons for the revocation at an informal interview.  Pet. at 34-35: *see* P. Decl. ¶¶ 14-15.

On or around January 25, 2026, respondents gave petitioner a Form I-229(a), Warning for Failure to Depart and an Instruction Sheet to Detainee Regarding Requirement to Assist in Removal.  Pet. at 14; Malik Decl., Ex. B.  On or around February 13, 2026, an ICE official and a Cambodian official interviewed petitioner in an attempt to procure a travel document for removal.  Pet. at 14; P. Decl. ¶ 16.  Cambodia subsequently denied a travel document for petitioner.  Pet. at 14; P. Decl. ¶ 16.

On March 31, 2026, ICE conducted another interview and, to petitioner's understanding, had him sign a form stating that he is a Vietnamese national due to his parents' nationality.  Pet. at 14; P. Decl. ¶ 17.  On or around May 4, 2026, petitioner received a second Form I-299(a).  Pet. at 14; Malik Decl., Ex. C.

### III.

### DISCUSSION

Petitioner raises four claims for relief: (1) his detention violates respondents' own regulatory revocation procedures; (2) his detention violates the INA as interpreted by *Zadvydas*; (3) his detention violates his Fifth Amendment procedural due process rights;

and (4) ICE's third country removal policies violate the Fifth Amendment, the Convention Against Torture, and governing regulations.  Pet. at 34-44.

**A.**     **This Court Has Jurisdiction Over the Claims in the Petition**

A federal district court may issue a writ of habeas corpus when a petitioner demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).   Here, petitioner argues he should be released from respondents' custody because his re-detention violates respondents' own procedures, the INA, and the Due Process Clause of the Fifth Amendment.  *See* Pet. at 34-43.  He has therefore properly invoked this court's habeas jurisdiction.

The INA contains several provisions that limit judicial review of immigration-related matters, including most notably 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g). While § 1252(g) strips the court of jurisdiction to hear any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," the Supreme Court has clarified that the language of § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions," but instead refers "to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted).  The applicability of § 1252(b)(9), which works in conjunction with § 1252(a)(5) to channel certain immigration-related matters to the Courts of Appeals, has been limited in similar fashion. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citation omitted); *see also Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810-11 (9th Cir. 2020) ("Section 1252(b)(9) is also not a bar to jurisdiction . . . because claims challenging the legality of detention . . . are independent of the removal process.") (citations omitted).  Because petitioner is challenging his detention rather than any of the

three actions listed above, 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) do not strip this court of jurisdiction.

**B.    Petitioner Is Entitled to Relief Under *Zadvydas***

Petitioner argues his detention violates 8 U.S.C. § 1231(a)(6) under *Zadvydas* because he has been detained for over six months and his removal is not reasonably foreseeable.  Pet. at 41.

In *Zadvydas*, the Supreme Court examined whether 8 U.S.C. § 1231(a)(6) authorizes the indefinite detention of noncitizens subject to a final order of removal beyond the initial 90-day removal period.  533 U.S. at 682.  The Court recognized that a statute that permitted the indefinite detention of a non-citizen "would raise serious constitutional concerns," and so held the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States."  *Id.* at 682, 689.  The Court found a sixth-month period of detention is presumptively reasonable.  *Id.* at 701; *see also Abramian v. Bondi*, 820 F. Supp. 3d 1050, 1057 (C.D. Cal. Jan. 16, 2026); *Zhao v. Kelly*, 2017 WL 1591818, at *2 (C.D. Cal. Apr. 27, 2017).  "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the Government to provide evidence to rebut that showing.  *Zadvydas*, 533 U.S. at 701.  Thus, if a noncitizen establishes there is no significant likelihood of removal in the foreseeable future and the government fails to rebut this showing, the noncitizen should be released on appropriate terms of supervision.  *Id*. at 699-700.

First, there is no dispute that petitioner's post-removal detention period meets the six-month threshold.  Petitioner has been detained since December 29, 2025, a period of six months.  Pet. at 7.  This alone is sufficient to satisfy the six-month standard.  In addition, petitioner was detained for approximately seven months in 1998 and 1999.  Pet. at 7; P. Decl. ¶ 8.  Thus, the record established that, in the aggregate, petitioner has been detained for at least 13 months.  *See, e.g., Phung v. Johnson*, 2026 WL 1365103, at *1 (C.D. Cal. May 15, 2026) (calculating the post-removal period in the aggregate); *Nghiem*

5

*v. Marin*, 2026 WL 1250267, at *2 (C.D. Cal. May 1, 2026) (same); *Pham v. Warden*, __ F. Supp. 3d __, 2026 WL 673404, at *5 n.1 (E.D. Cal. Mar. 10, 2026) (noting courts have found that the period of post-removal detention is cumulative); *Jaranow v. Bondi*, 819 F. Supp. 3d 1229, 1236 (W.D. Wash. 2026) (same); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721-22 (W.D. Wash. 2025) (same).  Respondents do not contest that petitioner's cumulative post-removal detention period exceeds six months.

Second, petitioner has "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *See Zadvydas*, 533 U.S. at 701.  Approximately 28 years have passed since petitioner's first removal order became final, and in all that time the government has been unable to effectuate his removal.  *See* Pet. at 7, 38-41.  As recently as February 2026, a Cambodian official denied a travel document for petitioner.  Pet. at 14; P. Decl. ¶ 16.  Although respondents have more recently begun efforts to remove him to Vietnam, they have not notified him that Vietnam has issued a travel document.  Pet. at 14-15.  Moreover, there is significant reason to doubt that Vietnam will issue petitioner a travel document, given that he may not be a citizen of Vietnam and given Vietnam's longstanding practice of generally not accepting its own citizens.  *See* Malik Decl., Ex. E; *Truong v. Mullin*, 2026 WL 1047908, at *4-*5 (C.D. Cal. Apr. 15, 2026) (explaining history of United States and Vietnam repatriation relations); *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1087-88 (C.D. Cal. 2020) (same).

Respondents do not oppose the Petition and have offered no evidence to rebut petitioner's showing.  Accordingly, habeas relief is warranted.

**C.    Petitioner's Remaining Claims**

Petitioner also argues that respondents have violated their own revocation procedures, his detention violates his rights to procedural due process under the Fifth Amendment, and any third country removal would violate the Constitution.  Pet. at 34-41, 43-44.  Because the court has already concluded that petitioner is entitled to release on his indefinite detention claim, it need not address petitioner's remaining claims.

6

Petitioner may raise these claims again if he is subject to any future detention. Nevertheless, the court notes that petitioner's third country removal claim does not yet appear to be ripe.

## IV.

## ORDER

IT IS THEREFORE ORDERED that: (1) Judgment will be entered granting the Petition; (2) respondents shall immediately release petitioner Van Luu Phan (A# 025-352-999) from immigration custody; (3) respondents shall return any confiscated property and documents to petitioner upon his release; (4) respondents are enjoined and restrained from re-detaining petitioner unless petitioner has violated a term of his release or because his deportation is imminent and they have first obtained the necessary documents for his removal, in which case they must follow all procedures set forth in 8 C.F.R. § 241.13 and any other applicable statutory and regulatory procedures; and (5) respondents shall file a status report no later than **July 6, 2026** confirming that petitioner has been released from respondents' custody.

Dated: July 1, 2026

SHERI PYM
United States Magistrate Judge

7